**A. D. HERRING, Plaintiff-Appellant,**

v.

**KENNEDY–HERRING HARDWARE CO., Inc., Defendant-Appellee.**

**No. 14301.**

United States Court of Appeals
Sixth Circuit.

May 17, 1961.

---

William R. Weeks, II, Wagner & Weeks, Chattanooga, Tenn., on brief, for appellant.

Joseph F. Wheless, Chattanooga, Tenn., for appellee.

Before MILLER, Chief Judge, O'SULLIVAN, Circuit Judge, and THORNTON, District Judge.

## PER CURIAM.

Plaintiff-appellant, A. D. Herring, brought suit against defendant-appellee, Kennedy-Herring Hardware Company, Inc. (hereinafter referred to as the company) for $58,300 which he claimed was owed to him by appellee for back salary as a former officer-employee of such company. The district judge, after trial without a jury, gave judgment for defendant company. Plaintiff, hereinafter referred to as Herring, and one L. L. Kennedy, hereinafter referred to as Kennedy, in 1947 organized the defendant company. They were its largest, and controlling, shareholders. Kennedy was its President and Herring its Vice-President. The corporate shares were owned, 500 by Kennedy, 400 by Herring, 140 by Robert K. Bell and wife, and 135 by Wright R. Ross. Kennedy, Herring, Bell and Ross constituted the Board of Directors. Bell and Ross were Secretary and Treasurer, respectively. The paid in capital stock totalled $117,500.

At all times from the formation of the corporation in 1947 until July, 1955, when the company acquired all of its issued shares except those owned by Kennedy, Herring and Kennedy, as managing officers, drew substantially the same salaries from the business. From 1950 through July, 1955, salaries actually paid to these men ranged from approximately $6,000 to approximately $8,000. In January, 1951, there was set up on the books of the company a new salary schedule (retroactive to include 1950) which fixed the salaries of Kennedy and Herring each in the annual amount of $20,000. Such amounts were never paid in full, but accrued on the company's books as owing to said officers. Upon audit by the Internal Revenue Department, these accruals were reduced to $18,000 for Kennedy and $10,000 for Herring. Herring, however, was, for a time, drawing an additional salary from a subsidiary of the company. The amounts accrued or paid to Kennedy and Herring from the company and its subsidiary continued to total substantially the same amount for each of them. At the time of setting up this schedule of salaries for Kennedy and Herring, salaries in lesser amounts were also set up for shareholders Ross and Bell, as Treasurer and Secretary of the company. No salaries were ever paid to these latter two.

The amount sued for by Herring in the case at bar represented the excess of Herring's book accrued salary over what was actually paid to him. The company, as defendant, claimed that such excess never became a legal obligation.

The evidence on the trial presented an issue of fact as to whether the large salaries for Kennedy and Herring were ever intended to be legal obligations of the company. There was evidence that they were set up on the books in anticipation of a "salary freeze" thought to be imminent because of the Korean war and that they were also set up "for tax purposes." While minutes purporting to record directors' resolutions authorizing such salaries were prepared and included in the corporate records, there was evidence from which it could be found that no such resolutions were ever adopted by such directors. Referring to the intent of the officers and directors in relation to such salaries, plaintiff Herring testified to his understanding that such salaries "should not be paid until it was definitely decided that it (the salaries) was able to be paid," and that "it was set up to be paid whenever we felt like we wanted to." An ac-

countant for the company testified that, "when we first started them up, there was no thought about paying them because they didn't have any money." The minutes of alleged action by the directors recited that the meeting of January 3, 1951, fixing salaries for 1950 and the meeting of January 3, 1952, fixing salaries for 1951, were held, "before the date of freeze." The company's accountant, whose advice apparently brought about the writing of the above minutes, gave as the reason for setting up the larger salaries the possibility of a wage freeze, and said "I thought it was good advice to them to get that figure authorized and even if they didn't pay it, it didn't hurt anything." There was evidence that at no time while the salaries were being accrued on the books was the corporation able to pay them.

There were two directors besides Herring and Kennedy. One of these testified that there was no intention to pay the larger salaries to Herring and Kennedy. The other expressed his understanding that the intent of setting up such salaries was so that, "if the corporation ever became in a position to where they could pay those salaries, they could," and, "it was based on whether the corporation could earn those." At no time did the directors ever determine that the company was in position to pay the larger salaries involved.

In 1955, Herring and Kennedy fell out and each was seeking to buy control of the corporation. Negotiations for this purpose concluded in July, 1955, and Kennedy accepted an offer of all the other shareholders to sell their shares. He consummated the purchase by having the corporation buy such shares. During the negotiations leading to the offer to sell, shareholders Bell and Ross expressly waived any claim for salaries which had been set up for them as Secretary and Treasurer of the company. Herring did not join in such waiver.

There was evidence that in communicating the offer to sell their shares to Kennedy, Bell and Ross, at the instigation of Herring, wired Kennedy that an offer had been made by an undisclosed outsider for all of the shares of Bell, Ross and Herring at a price substantially above the book value of the stock. They had no such offer, but the claim persuaded Kennedy to buy at the demand price. After the shares of Herring and the others had been purchased, the instant suit was brought by Herring.

The large salaries set up for the officers were carried as accrued liabilities of the company and were claimed as deductions on its income tax returns. At the time of an audit by the Internal Revenue Department, Kennedy signed an affidavit stating the company owed the salaries claimed as deductions.

The factual issue presented by this evidence as to whether the salary claimed by Herring was an obligation of the company, was resolved against Herring by the district judge. In his Findings of Fact and Conclusions of Law he found, "These salaries were fictitious and the corporation was not firmly committed to pay them. Mr. Herring, as director and vice-president of the corporation, knew that the company had not committed itself to pay them at any time and that they were set up on the books for other purposes than salaries. Mr. Kennedy also knew the corporation was not committed to pay such salaries. * * * The resolution authorizing the payment of $20,000.00 each to Mr. Herring and Mr. Kennedy was not legally and properly passed upon by the directors of the corporation. * * * All the officers and directors of the corporation knew the salaries were fictitious."

We are satisfied that the district judge could, under the evidence, come to the factual conclusions thus expressed. The facts so found vitiated plaintiff's claim for recovery. Being of the opinion that these Findings were not clearly erroneous, we are not at liberty to set them aside (Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.).

Judgment is affirmed.